## Salem

## ZED RATLIFF

v.

## DOMINION COAL COMPANY, et al.

No. 1426-85

Decided October 7, 1986

COUNSEL

Gerald Sharp (Larry Grant Browning; Browning, Morefield, and Schelin, P.C., on brief), for appellant.

Dennis E. Jones (Jones & Code, P.C., on brief), for appellee.

OPINION

**KOONTZ, C.J.,** — Appellant, Zed Ratliff, appeals from a decision of the Industrial Commission holding that his claim for coal worker's pneumoconiosis benefits was time barred. Although the parties present a number of issues on appeal, the critical issue, and the only one we need address, is whether the Commission erred in finding that Ratliff's claim was barred by the statute of limitations. We agree with the Commission, and affirm.

Ratliff worked in the coal mines of Southwest Virginia for more than thirty years, the last seventeen as a foreman for appellee Dominion Coal Corporation. In 1971, the United States Department of Health, Education and Welfare took a chest X-ray of Ratliff. Dr. W. Casey Morgan, Chief, Appalachian Laboratory for Occupational Respiratory Diseases of Morgantown, West Virginia, read the X-ray to indicate that Ratliff was suffering from "category 2 simple pneumoconiosis (UICC classification)." A copy of the X-ray findings was sent to Dr. J. P. Sutherland of Grundy, Virginia, Ratliff's personal physician. Dr. Sutherland advised Ratliff that he "had black lung," and that "he shouldn't be working in dust." Ratliff continued working in the mines.

In 1973 Ratliff filed an "APPLICATION FOR BENEFITS UNDER THE FEDERAL COAL MINE HEALTH AND SAFETY ACT OF 1969, AS AMENDED (Coal Miner's Claim of Total Disability)," seeking benefits under the Federal Coal Mine Health and Safety Act, as amended. By letter dated October 24, 1979, the United States Department of Labor advised Ratliff that he met "the disability standards under the Black Lung Benefits Act." On December 22, 1979, Ratliff, by letter, ad-

vised the Department of Labor that he did not wish to pursue his claim at that time, and would continue to work.

Ratliff continued working until March 13, 1985. Dr. Emory Robinette then advised Ratliff to cease working due to complicated coal worker's pneumoconiosis. Ratliff filed for benefits under the Virginia Workers' Compensation Act on March 25, 1985, seeking compensation for total disability.

The deputy commissioner and the full Commission held that the claim was barred by the statute of limitations. The Commission stated:

In this case of first impression, we hold that the statute of limitations may not be extended by the claimant through his own actions. Here, the claimant received competent medical advice, at least by October 24, 1979, that he met the disability standards of the Federal Black Lung Benefits Act. At that time, or within three years from that date, the claimant should have stopped work in the mines, based upon this medical advice, and filed his claim for total disability.

We agree.

Ratliff filed the instant claim on March 25, 1985, seeking benefits for total disability under Code § 65.1-56.1(4). He argues that this code section contains a statute of limitations in and of itself, and that he is not barred from pursuing his claim under the language of that paragraph. Code § 65.1-56.1(4) reads in pertinent part:

[A]ny employee having a claim for coal worker's pneumoconiosis benefits shall be compensated according to the following schedule:

\* \* \*

(4) For coal worker's pneumoconiosis medically determined to be A, B or C under the U.I.C.C. or I.L.O. classifications or which involves progressive massive fibrosis, or for any category of coal worker's pneumoconiosis when it is accompanied by sufficient pulmonary function loss as shown by approved medical tests and standards to render an employee totally unable to do manual labor in a dusty environment,

and the employee is instructed by competent medical authority not to attempt to do work in any mine or dusty environment *and if he is in fact not working*, it shall be deemed that he has a permanent disability and he shall receive sixty-six and two-thirds per centum of his average weekly wages, during the three years prior to the date of filing of the claim, up to one hundred per centum of the average weekly wage of the Commonwealth as defined in § 65.1-54 for his lifetime without limit as to the total amount. (emphasis added).

■ Ratliff argues that the words "and if he is in fact not working" mean that the statute of limitations does not begin to run until a coal miner ceases work. This is clearly not the case. Code § 65.1-56.1(4) appears in Chapter 5 of the Virginia Workers' Compensation Act, entitled "Compensation and Payment Thereof." A reading of Code § 65.1-56.1(4) clearly indicates that it governs the amount of compensation to be awarded a claimant who meets the standards prescribed therein. To receive compensation under paragraph 4, the claimant must, among other things, cease work in the coal mines. This paragraph in no way prescribes the time period in which a claimant must file a claim after receiving a communication of a diagnosis of pneumoconiosis.

The applicable Virginia statute of limitations is contained in Code § 65.1-52:

The right to compensation under this chapter shall be forever barred unless a claim be filed with the Industrial Commission within one of the following time periods:

1. For coal miners' pneumoconiosis, three years after a diagnosis of the disease is first communicated to the employee or within five years from the date of the last injurious exposure in employment, whichever first occurs.

■ If the Virginia Code contained no other applicable statute our analysis could end here. Clearly, Ratliff received a communication of a diagnosis in 1971 and failed to file a claim. The limitation period would have run by 1974. However, the Workers' Compensation Act includes Code § 65.1-65.2, which reads in pertinent part:

Notwithstanding any other provisions in this Act, on and after July one, nineteen hundred seventy-three, or any extended date allowed for State workmen's compensation laws to conform to standards imposed by the United States Department of Labor under the 1969 Federal Coal Mine Health and Safety Act as amended, in the case of claims for death or total disability under §§ 65.1-56.1(4) and/or 65.1-65.1, the following matters shall be required or effective only to the extent that they are allowed by the 1969 Federal Coal Mine Health and Safety Act as amended and the regulations issued thereunder:

\* \* \*

(2) Any limitation for the filing of a claim for benefits for death or total disability under §§ 65.1-52 and 65.1-87.

The applicable federal limitations period is contained in 30 U.S.C. § 932(f): "Any claim for benefits by a miner under this section must be filed within three years after . . . a medical determination of total disability due to pneumoconiosis." The corresponding federal regulation provides: "A claim for benefits filed under this part by, or on behalf of, a miner shall be filed within three years after a medical determination of total disability due to pneumoconiosis which has been communicated to the miner." 20 C.F.R. § 725.308 (1986). Thus, in order to trigger the running of this statute of limitations, a claimant must receive a communication of a diagnosis of pneumoconiosis, and there must also be "a medical determination of total disability due to pneumoconiosis."

We find that the 1979 letter from the Department of Labor was "a medical determination of total disability due to pneumoconiosis," so as to trigger the running of the three year limitation period. To reach this result, two findings must be made. First, there must be a "medical determination." Ratliff argues that the Department of Labor letter was an administrative or legal determination, but not a "medical determination." We decline to adopt such a constrained interpretation of the statute and regulation. The letter was in response to a federal claim filed by Ratliff and supplemented with medical evidence. Indeed, the letter itself makes reference to the medical evidence that was considered in determining that Ratliff met the federal disability standards.

The second factor which must exist is a finding that the medical determination was one of "total disability." The Federal Coal Mine Health and Safety Act of 1969, as amended, is designed to provide compensation for "certain miners, former miners, and their survivors for death or total disability due to pneumoconiosis arising out of employment in coal mines." *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 5 (1976); *see also* 30 U.S.C. § 901(a); Knight, *Compensation for Black Lung at the Federal Level: A Precedent for Nationalized Workmen's Compensation*, 57 Va. L. Rev. 97, 98-99 (1971).

Ratliff was notified by the Department of Labor that he met the federal disability standards. While the letter did not use the term "total disability," Ratliff knew, or should have known, that under federal law he was found to be totally disabled because the federal government only compensates for total disability or death. This finding is supported by the fact that Ratliff had previously completed an application for federal benefits subtitled: "(Coal Miner's Claim for Total Disability)." While we recognize that what qualifies as "total disability" under federal law may not qualify as "total disability" under Virginia law, *see* 30 U.S.C. §§ 902, 921(c)(3), and 921(c)(4); Code § 65.1-56.1(4), it was, nevertheless, incumbent upon Ratliff to file a Virginia claim to allow the Commission to determine if Ratliff met the Virginia total disability standards. Our holding is in keeping with the rule of law recently enunciated in *Parris v. Appalachian Power Co.*, 2 Va. App. 219, 225-26, 343 S.E.2d 455, 458-59 (1986):

> [O]nce an employee receives a communication of an occupational disease, it is incumbent upon that employee to file a claim. Once a claim is filed, it is the duty of the Commission to determine: (1) whether the disease is in fact an "occupational disease" as defined in Code § 65.1-46, and if so, (2) whether that occupational disease is compensable.

(footnotes omitted).

Once Ratliff received "a medical determination of total disability due to pneumoconiosis" via the 1979 Department of Labor letter, it was incumbent upon him to file a Virginia claim within three years in order to allow the Industrial Commission to determine whether, in addition to meeting the federal total disability standards, he also met the Virginia total disability standards.

Ratliff failed to file a claim until 1985. The Commission was correct in holding that the claim was barred by the statute of limitations.

*Affirmed.*

Coleman, J., and Moon, J., concurred.