COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Moon, Judge Fitzpatrick and
         Senior Judge Duff
Argued at Alexandria, Virginia


CITY OF ALEXANDRIA

v.   Record No. 1862-94-4                    OPINION BY
                                    CHIEF JUDGE NORMAN K. MOON
EARL J. CRONIN, DECEASED                     JUNE 20, 1995

         FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

         Philip G. Sunderland (Amy Marschean; Office
         of the City Attorney, on brief), for
         appellant.

         Jack T. Burgess; (Michael A. Kernbach; Cohen,
         Dunn & Sinclair, P.C., on brief), for
         appellee.


     The City of Alexandria ("the city") appeals the decision of
the commission awarding death benefits to Earl J. Cronin's
estate.  The city contends that the commission erred by making
the award because Cronin was aware that he suffered from an
occupational disease over two years before his estate filed for
death benefits and, therefore, pursuant to Code § 65.2-406(A)(5),
the statute of limitations barred his estate from receiving
compensation.  We agree and reverse the commission's award.

     Cronin served as a firefighter for the City of Alexandria.
In October 1989, Cronin's physician, who was treating Cronin for
hypertension (also an occupational disease), diagnosed Cronin as
suffering from heart disease and recommended in a letter to
Cronin's superior that Cronin be medically retired because of his
heart disease.  Soon afterwards, Cronin filed with the city for

service-connected disability retirement, which pays more benefits than non-service-connected disability retirement. In support of his application, Cronin presented his physician's October 1989 letter to the division chief of the benefits and systems division of the city's personnel services department.

On February 1, 1990, Cronin was medically retired from the city's fire department based upon a "partial disability-service connected" and, accordingly, was awarded benefits. Two days earlier, Cronin signed a form captioned "Retirement Income Notice, Disability Income Notice" acknowledging and certifying that his disability for which he was retiring was service-connected. The city's retirement plan requires that in order for an employee to be eligible for service-connected disability benefits, his or her injury must also be compensable under the Workers' Compensation Act.

On February 22, 1992, Cronin suffered a massive heart attack and died. A claim for benefits was filed by Cronin's estate for his death on May 18, 1992. The city defended the claim on the ground that the estate was barred by the statute of limitations because Cronin had been informed that he suffered from an occupational disease over two years before his death.

At the hearing, the parties agreed that Cronin received a formal diagnosis of coronary heart disease in October 1989, but disputed whether Cronin was informed that his disease was work related. The decedent's widow and brother both acknowledged that Cronin was aware of his heart condition and that there had been

discussions with the city's personnel services department about the payment of his medical bills for this condition. However, both denied that Cronin ever mentioned his condition's compensability under the Workers' Compensation Act. A September 24, 1993 letter from Dr. Richard Schwartz, who reviewed Cronin's medical records, states that the records do not show that Cronin was "told by any health care provider that he had a coronary heart disease related to his employment as a firefighter."

The city's risk manager in charge of claimants receiving benefits testified that she met with Cronin extensively from December 1990 through February 1991. The risk manager informed Cronin, who was under the misimpression that he was already receiving workers' compensation indemnity payments, that were he to receive such indemnity benefits, they would, under the terms of the city's pension plan, cause a dollar-for-dollar reduction in his disability retirement payments, and he would have to undergo vocational rehabilitation and return to work if possible. After learning he would achieve no net gain in receiving the indemnity benefits and that he would be subject to the vocational rehabilitation program, Cronin opted not to seek an award from the commission, but applied for service-connected disability retirement benefits.

On the estate's death claim, the commission found that Cronin had "applied for service-connected disability and knew he could receive an award from the commission for his heart disease," but that the evidence fell short of establishing the

- 3 -

requisite communication to Cronin of his occupational disease under the Workers' Compensation Act. The commission ruled that while Cronin "believed his condition was work related," the estate was not barred by the limitations period because Cronin was not "medically advised that his condition was causally related to his work."

> Code § 65.2-406 (A)(5) which provides, in pertinent part:
> A. The right to compensation under this chapter shall be forever barred unless a claim is filed with the Commission within . . .
>
>      *     *     *     *     *     *     *
>
>     5. For all other occupational diseases, two years after a diagnosis of the disease is first communicated to the employee . . . .

In this case, Cronin filed for service-connected disability retirement benefits based on a treating physician's letter recommending that he be "medically retired" because of such condition, but the letter did not specifically state that Cronin's condition was work related.[1]

The commission's ruling that Cronin did not receive the requisite communication because he was not "medically advised [by a physician] that his condition was causally related to his work" extends the breadth of existing case law to a point of requiring proof of a physician's direct communication to the employee that the disease from which the employee suffers is work related.

---

[1] Heart disease is a presumed occupational disease under the Workers' Compensation Act for police officers and fire fighters.

Under this interpretation of the law, benefits would be available even if compelling and unrefuted evidence proved the employee's knowledge of the compensability of his disease.

By interpreting the statute as requiring proof of a communication by a physician of the employee's occupational disease, the commission ignores the fact that, while many employees may receive a diagnosis of his or her disease from a physician, the claimants may receive the communication that such a disease is a compensable occupational disease from someone other than a physician, often an attorney or someone in charge of personnel or administering benefits.  The commission's ruling overlooks practical experience under the Act and the fact that the compensability of an occupational disease is a creation of the legislature.  A physician's diagnosis of an employee's condition is not dispositive on the issue of compensability and physicians often reach different conclusions about a condition's origin.

> [O]nce an employee receives a communication of an occupational disease, it is incumbent upon that employee to file a claim.  Once a claim is filed, it is the duty of the Commission to determine: (1) whether the disease is in fact an "occupational disease" as defined in Code § 65.1-46, and if so, (2) whether that occupational disease is compensable.

Parris v. Appalachian Power Co., 2 Va. App. 219, 225-26, 343 S.E.2d 455, 458-59 (1986) (footnotes omitted).

Neither this Court nor the Supreme Court of Virginia has interpreted Code § 65.2-406 (A)(5) as requiring a communication from a physician to trigger the running of the limitations

period.  We hold that Code § 65.2-406 (A)(5) does not require that an employee receive from a physician a communication that his disease is work related; rather, the statute only requires that the employee, simultaneously with or sometime after the diagnosis of his condition, learn that the condition is an occupational disease for which compensation may be awarded. See Ratliff v. Dominion Coal Co., 3 Va. App. 175, 349 S.E.2d 147 (1986) (where we held that a 1979 letter from the Department of Labor was "a medical determination of total disability due to pneumoconiosis," so as to trigger not only the running of the three year limitation period under the federal law but also under the Virginia Workers' Compensation Act).  In Ratliff, we rejected the claimant's argument that a letter from the Department of Labor was an administrative or legal determination, not a "medical determination."  Id.

Here, we have not only evidence of the physician's diagnosis of Cronin's heart disease, but evidence that Cronin was aware of its connection to his employment.  He filed for service-connected retirement benefits based on the diagnosis more than two years before his death and before his estate filed a claim with the commission.  Having applied for and received disability benefits based upon this diagnosis, Cronin, like Ratliff, was medically informed that his heart condition was an occupational disease for which he could receive benefits under the Workers' Compensation Act.  Indeed, the record establishes and the commission specifically found that Cronin believed his heart disease was

work related and knew he could receive an award from the commission.

We are not persuaded by the claimant's argument that the statutory language which refers to the time of the "diagnosis" by definition requires a communication from a physician. We distinguish this case from <u>Garrison v. Prince William Co.</u>, 220 Va. 913, 265 S.E.2d 687 (1980), in which the Supreme Court of Virginia held that a deputy sheriff who had been diagnosed with hypertension in 1975 and filed claim for the same in 1978 was not barred from receiving compensation because he had not received "a diagnosis that he suffer[ed] from an `occupational disease': one arising out of and in the course of employment." 220 Va. at 917, 265 S.E.2d at 689. That Garrison might have successfully brought a claim at an earlier date due to the statutory presumption set forth in Code § 65.1-47.1, the Court said is "irrelevant" to the resolution of whether the limitations period applied. <u>Id.</u>

Unlike <u>Garrison</u>, Cronin was not an unsuspecting employee who filed with the commission late only after having learned of the relatively new statutory presumption under then Code § 65.1-47.1. Rather, Cronin received a medical diagnosis of his heart condition and acted upon such diagnosis to receive service-connected disability benefits. This action proved that Cronin was informed for purposes of the statute.

Accordingly, we reverse the commission's award.

<u>Reversed and dismissed.</u>