COURT OF APPEALS OF VIRGINIA


Present:  Judges Elder, Frank and Humphreys
Argued at Salem, Virginia


JERRY S. MILLER
                                      MEMORANDUM OPINION* BY
v.    Record No. 0997-00-3            JUDGE ROBERT P. FRANK
                                         DECEMBER 5, 2000
REYNOLDS METALS COMPANY AND
 ACE AMERICAN INSURANCE COMPANY


          FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

              John P. Vita (Mann & Vita, P.C., on brief),
              for appellant.

              (Patricia C. Arrighi; Taylor & Walker, P.C.,
              on brief), for appellees.  Appellees
              submitting on brief.


     Jerry S. Miller (claimant) contends the Workers'

Compensation Commission (commission) erred in:  1) finding he

received a diagnosis of work-related bilateral carpal tunnel

syndrome on October 31, 1996, which thereby barred his claim for

benefits under Stenrich v. Jemmott, 251 Va. 186, 199, 467 S.E.2d

795, 802 (1996), 2) finding that his statement to the insurance

carrier's representative on November 8, 1996 indicated a clear and

understandable diagnosis of work-related bilateral carpal tunnel

syndrome, which thereby barred his claim for benefits under

Jemmott, and 3) failing to consider principles of equity,

_____

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

fairness and public policy.  Finding no error in the
commission's decision, we affirm.

## I.  BACKGROUND

Claimant has been involved in welding, pipefitting and
fabricating metal for thirty-two years.  Claimant has been
employed as a maintenance mechanic with Reynolds Metals Company
(employer) for twelve years.  Claimant performed these tasks
using both hands repetitively for forty-hour work weeks, eight
hours per day.  Throughout his career, claimant used repetitive
motion tools such as drills, grinders, saws, hand-wrenches and
pipe-wrenches.  He did not engage in any activities outside his
employment that required the repetitive use of his hands.

Claimant began experiencing tingling and numbness in both
hands sometime in October 1996.  Employer referred claimant to
Dr. Kent Diduch.  Dr. Diduch advised claimant that he might have
carpal tunnel syndrome but that his problems could also be
vascular.  After consulting with Dr. Diduch, claimant feared
that the complaints were related to his heart.  Dr. Diduch only
saw claimant on one occasion and never diagnosed him with carpal
tunnel syndrome.

Claimant then consulted with Dr. James VanKirk.  Dr.
VanKirk also considered carpal tunnel syndrome as the possible
cause of claimant's complaints but advised claimant that his
smoking habit could be a factor.  Dr. VanKirk saw claimant on
just one occasion and did not render a diagnosis.  Dr. VanKirk

-

referred claimant to Dr. Edward Hemphill, an orthopedic physician.

Claimant first saw Dr. Hemphill on October 14, 1996. Dr. Hemphill suspected carpal tunnel syndrome as the cause of claimant's problems but withheld a firm diagnosis pending the results of an EMG. Dr. Peter Puzio performed an EMG on October 22, 1996, which confirmed that claimant suffered from bilateral carpal tunnel syndrome. Although claimant described his work history to Dr. Hemphill, he testified that Dr. Hemphill did not advise him at that time that the carpal tunnel syndrome was related to his employment. In fact, claimant testified that he only learned that the carpal tunnel syndrome was related to his employment in Dr. Hemphill's letter of December 3, 1998.

Employer filed an Employer's First Report of Accident on November 5, 1996, and, as a result, claimant was sent the "blue letter" and informational pamphlet by the commission.

Claimant underwent a carpal tunnel release on his left wrist on November 6, 1996. He had several post-operative visits with Dr. Hemphill through January 1997. From his initial visit in October 1996 through his last visit in January 1997, claimant testified Dr. Hemphill never advised him that the carpal tunnel syndrome was related to his employment.

Glenn Parker of Cigna Insurance, the insurance carrier for employer, interviewed claimant on November 8, 1996. In the interview, which was transcribed and admitted into evidence at

the hearing, Parker explained to claimant that he would receive a "blue letter" from the commission explaining the claim process.

The following exchange then occurred between claimant and Parker:

Parker:        Ok.  Anything else you would like me to state?

Claimant:      No other than, the physician seems to think it is work related and I told him from what I had read about it it had come from repetitive motion.

Parker:        Uh-huh.

Claimant:      And my job I don't exactly do the same identical same over and over but I have been doing maintenance work and working with my hands for probably 32, 33 years now and he said that's, in my case, the repetition didn't do it, it's just a number of years that I have been doing physical rough work with my hands.

At the hearing, claimant testified regarding his statements to Parker, stating that he simply assumed that Dr. Hemphill thought his carpal tunnel syndrome was work-related because Dr. Hemphill inquired about his job duties.  Claimant testified, "I just kind of had to guess for myself what he meant."  But, claimant testified Dr. Hemphill never told him during his visits in 1996 and 1997 that his condition was work-related.

-

Claimant testified that Dr. Hemphill's diagnosis on October 31, 1996 did not prompt him to file a claim for benefits in 1996 or 1997. At that time, according to claimant, he did not possess a clear understanding of whether or not his work caused his carpal tunnel syndrome. Both Dr. Diduch and Dr. VanKirk had suggested other factors, such as vascular disease and smoking, as the cause of his carpal tunnel syndrome. He also was discouraged from filing a claim for benefits after receiving a letter from Parker on December 18, 1996, which stated his claim was denied because it did not arise out of his employment. Claimant testified he ultimately filed his claim on October 27, 1998, because, after reading information from the commission that stated he was required to file a claim within two years from the time the diagnosis was communicated to him, he was concerned that the statute of limitations would run. Claimant believed that the statute of limitations would expire on October 31, 1998, because Dr. Hemphill diagnosed him with carpal tunnel syndrome on October 31, 1996. Claimant stated he wrote the word "diagnosis" on the Claim for Benefits application form that said "Date doctor told you disease was caused in your work" in order to clearly indicate that October 31, 1996 was the date of diagnosis rather than the date of communication of an occupational disease. However, claimant testified the pamphlet he received from the commission stated the time for filing a claim was two years from the time "you find out it is work related."

-

The deputy commissioner made the following findings of fact:

> In the present case, after a thorough review of the medical records and testimony, it appears to the Commission that a firm diagnosis of carpal tunnel syndrome, related to his work, was conveyed to the claimant in October of 1996. Dr. Hemphill's initial medical record discusses the claimant's years of repetitive use of his hands in his work as a causative factor. The fact that Dr. Hemphill, according to the claimant, has not <u>explicitly</u> laid this out in his medical record is not dispositive since such a causal statement would generally only be included in a medical record when prepared for litigation or insurance purposes. It is clear from reading the records, however, that the claimant's repetitive use of his hands was Dr. Hemphill's primary focus.

> Further, although the claimant was somewhat vague as to whether or not Dr. Hemphill ever communicated the diagnosis to him, he did testify that he <u>assumed</u> that the doctor thought his carpal tunnel syndrome was work related. This is also reflected in his recorded statement, given on November 8, 1996, when the claimant stated that he had been given a diagnosis of bilateral carpal tunnel syndrome and that "the physician seems to think it is work related."

In affirming the decision of the deputy commissioner, the commission found:

> The claimant told the case manager that it was his belief based on what Dr. Hemphill told him that the carpal tunnel was a result of his work. He was very specific in his statement indicating that he had read that the condition occurs because of repetitive motion, but that Dr. Hemphill said his was not due to repetition, but rather due to doing the same type of work for many years. . . .

-

His assertion that he only received a "diagnosis" and not a communication is without support.  He informed the employer of his symptoms; he followed the employer's instruction in obtaining medical care; he received the "blue" letter from the Commission; he filed an application for hearing, and he gave a recorded statement to the case manager indicating he had been informed of the diagnosis and cause by the treating physician.

## II.  ANALYSIS

Claimant's first two assignments of error involve the date on which the commission found that he received communication that his carpal tunnel syndrome was work-related.  Claimant contends he received communication that his carpal tunnel syndrome was work-related on December 3, 1998, when he received the letter from Dr. Hemphill.  Employer contends, and the commission so found, that the communication occurred on October 31, 1996.

On March 1, 1996, the Supreme Court of Virginia, in Stenrich Group v. Jemmott, 251 Va. 186, 199, 467 S.E.2d 795, 802 (1996), ruled that a disease resulting from cumulative trauma caused by repetition is not compensable under the Workers' Compensation Act (Act).  Effective July 1, 1997, the General Assembly amended the Act to make carpal tunnel syndrome compensable.  Code § 65.2-400.

Although this case does not involve a statute of limitations issue, we cite cases involving the statute of limitations because they are instructive.

The law in effect on the date of injury controls.  See Roller v. Basic Constr. Co., 238 Va. 321, 330, 384 S.E.2d 323, 327

-

(1989).  "The date on which the diagnosis of an occupational disease is made and first communicated to the employee is treated as the date of injury and as the happening of an injury by accident.  The rights and liabilities of the parties vest and accrue on that date."  Chesapeake & Potomac Telephone Co. v. Williams, 10 Va. App. 516, 518-19, 392 S.E.2d 846, 847 (1990) (citations omitted).

> Whether a diagnosis of an occupational disease was communicated and when the communication occurred are factual determinations to be made by the commission upon the evidence.  See Roller v. Basic Constr. Co., 238 Va. 321, 329, 384 S.E.2d 323, 326 (1989).  Upon appellate review, the findings of fact made by the commission will be upheld when supported by credible evidence.  See James v. Capitol Steel Constr. Co., 8 Va. App. 512, 515, 382 S.E.2d 487, 488 (1989).

Uninsured Employer's Fund v. Mounts, 24 Va. App. 550, 558, 484 S.E.2d 140, 144 (1997), aff'd, 255 Va. 254, 497 S.E.2d 464 (1998).

Communication has two elements:  1) communication of the diagnosis and 2) communication that the disease is work-related.  "The diagnosis need not contain precise medical terminology as long as the diagnosis is definite and informs the claimant in clear and understandable language that he or she is suffering from a disease that arises out of and in the course of employment."  Via v. Citicorp Mortgage, Inc., 10 Va. App. 572, 576, 394 S.E.2d 505, 507 (1990) (citation omitted).

> Code § 65.2-406(A)(5) does not require that an employee receive from a physician a

-

communication that his disease is work related; rather, the statute only requires that the employee, simultaneously with or sometime after the diagnosis of his condition, learn that the condition is an occupational disease for which compensation may be awarded.

City of Alexandria v. Cronin, 20 Va. App. 503, 508-09, 458 S.E.2d 314, 317 (1995) (citation omitted), aff'd, 252 Va. 1, 471 S.E.2d 184 (1996).

By interpreting [Code § 65.2-406(A)(5)] as requiring proof of a communication by a physician of the employee's occupational disease, the commission ignores the fact that, while many employees may receive a diagnosis of his or her disease from a physician, the claimants may receive the communication that such a disease is a compensable occupational disease from someone other than a physician, often an attorney or someone in charge of personnel or administering benefits.

Id. at 508, 458 S.E.2d at 316.

Because it is undisputed that claimant received a positive diagnosis of his condition in October 1996, the only issue we consider is when the causation of the condition was communicated to claimant.

The commission found the evidence established that Dr. Hemphill diagnosed claimant with carpal tunnel syndrome in October 1996 and that claimant understood from Dr. Hemphill that the disease was related to his work.

"[A] finding by the Commission upon conflicting facts . . . is conclusive and binding on this Court, absent fraud,

-

when such determination is supported by competent, credible evidence." C.D.S. Constr. Servs. v. Petrock, 218 Va. 1064, 1070, 243 S.E.2d 236, 240 (1978) (citations omitted).

In this case, because the date of communication was in October 1996, after the Jemmott decision, but before the amendment, carpal tunnel syndrome was not compensable as of claimant's "date of injury."

Claimant finally contends that principles of equity, fairness, and public policy require reversal of the commission's decision. He maintains that because the Act is to be liberally construed in favor of the claimant, claimants who received a communication after Jemmott and before the July 1, 1997 statutory amendment should be compensated. Claimant argues his rights outweigh any burden placed on employers and insurance carriers. Claimant argues, "The General Assembly's failure to apply the July 1, 1997 amendment retroactively to such a small class of claimants is short sighted and unjust." We reject claimant's argument.

"While the provisions of the Virginia Act are to be liberally construed to see that its benefits are awarded to injured employees, that principle does not authorize the courts to amend, alter or extend its provisions, nor does it require that every claim asserted be allowed." Bowden v. Newport News Shipbuilding & Dry Dock Co., 11 Va. App. 683, 688, 401 S.E.2d 884, 887 (1991) (citations omitted).

-

Further, "[l]iberal construction, however, may not be used to amend a statute by changing the meaning of the statutory language."  Low Splint Coal Co., Inc. v. Bolling, 224 Va. 400, 404, 297 S.E.2d 665, 667 (1982) (citation omitted).

This Court and the Supreme Court of Virginia have maintained that broadening the scope of the coverage of the Act, which "impact[s] as it must a broad spectrum of economic and social values, is a matter of public policy reserved to the original and exclusive jurisdiction of the General Assembly, and we will not trespass upon its domain."  Western Electric Co. v. Gilliam, 229 Va. 245, 248, 329 S.E.2d 13, 15 (1985).

For these reasons, we find no error and affirm the commission's decision.

                                        Affirmed.