COURT OF APPEALS OF VIRGINIA


Present:  Judges Willis, Annunziata and Senior Judge Coleman[*]
Argued at Richmond, Virginia


DAN RIVER, INC.
                                        OPINION BY
v.    Record No. 0723-00-2        JUDGE ROSEMARIE ANNUNZIATA
                                     FEBRUARY 13, 2001
HENRY JUNIOR GIGGETTS


         FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

          James A.L. Daniel (Martha White Medley;
          Elizabeth B. Carroll; Daniel, Vaughan,
          Medley & Smitherman, P.C., on brief), for
          appellant.

          J. Gregory Webb (Michie, Hamlett, Lowry,
          Rasmussen & Tweel, P.C., on brief), for
          appellee.


     The appellant, Dan River, Inc., contends on appeal that the

appellee, Henry Junior Giggetts, is not entitled to workers'

compensation benefits because:  (1) Giggetts' willful misconduct

precludes compensation, pursuant to Code § 65.2-306; (2)

Giggetts did not experience a compensable injury by accident

that arose out of, as well as in the course of, his employment;

(3) Giggetts' alleged disability was caused by a pre-existing

condition; and (4) Giggetts failed to market his remaining

capacity to work.  For the reasons that follow, we affirm.

_____

          [*] Judge Coleman participated in the hearing and decision of
this case prior to the effective date of his retirement on
December 31, 2000 and thereafter by his designation as a senior
judge pursuant to Code § 17.1-401.

## BACKGROUND

Consistent with well-accepted principles, we view the evidence and the inferences that may be drawn from that evidence, in the light most favorable to Giggetts, the party prevailing below. Metro Mach. Corp. v. Lamb, 33 Va. App. 187, 191, 532 S.E.2d 337, 338 (2000). Giggetts worked for Dan River, Inc. as a long-distance or "over the road" truck driver during the period relevant to this appeal. On November 17, 1998, Giggetts left Danville, Virginia, made a delivery in Morgan, North Carolina, and was proceeding to Lake City, South Carolina, when he was involved in an accident. Giggetts was rounding a curve on a two-lane road in drizzling rain and drifting fog, when he saw a two-ton truck with its brake lights on, proceeding very slowly about twenty feet in front of him. The estimated speeds of Giggetts' truck and the two-ton truck were forty miles per hour and five to fifteen miles per hour, respectively. The posted speed limit was fifty-five miles per hour. Realizing he could not stop his truck in time, Giggetts steered to the right in order to avoid a collision and injury to the two-ton truck's occupants, and to avoid a collision with a school bus that was traveling toward Giggetts in the opposite lane.

Giggetts' truck struck a culvert pipe with its front wheel, lifted into the air, and came back down, hitting the culvert pipe again upon impact. Believing that his truck was going to go back across the road, Giggetts jerked the truck to the right

to avoid hitting the two-ton truck or the school bus, causing the truck to jackknife and come to rest in a residential yard. Giggetts stated that when his truck left the road the second time, his truck "gave [him] a great big shook or shake or whatever because the quickness of the stopping with my seatbelt jerked me." In describing the "jerk," Giggetts stated that the jerk was violent and involved a whipping motion from left to right.

Giggetts did not experience any pain until an hour and one-half to two hours later, reporting to Dan River that he was experiencing "sharp pains running down both of [his] legs." He was treated at a local hospital the day of the accident. At the time of the hearing, Giggetts reported continuous pain in his back and left leg, the need to take sleep medication, and the inability to drive. He testified that he was able to work around his house, but that he had difficulty standing or sitting for long periods of time.

Shortly after the accident, Dan River suspended Giggetts. In January 1999 Giggetts applied for unemployment benefits through the Virginia Employment Commission. He was told that in order to receive benefits, he must be willing and able to work. Thereafter, Giggetts applied for several jobs, but was unable to obtain employment.

ANALYSIS

On appeal, we are bound by findings of fact made by the Workers' Compensation Commission if credible evidence in the record supports those findings.  A.G. Van Metre, Jr., Inc. v. Gandy, 7 Va. App. 207, 215, 372 S.E.2d 198, 203 (1988).  We view the evidence in the light most favorable to Giggetts, the party prevailing below.  Southland Corp. v. Gray, 18 Va. App. 366, 369, 444 S.E.2d 19, 21 (1994).  The commission's decision will not be overturned unless plainly wrong or without evidence to support it.  Id.

I.

## Willful Misconduct

Under Virginia law, an employee cannot receive compensation under the Workers' Compensation Act when his or her injury is the result of either willful misconduct or willful breach of a rule or regulation adopted by the employer.  Code § 65.2-306(A). To establish this defense, the employer must prove:  (1) the rule was reasonable; (2) the employee knew of the rule; (3) the rule was for the employee's benefit; and (4) the employee intentionally performed the forbidden act.  Buzzo v. Woolridge Trucking, Inc., 17 Va. App. 327, 332, 437 S.E.2d 205, 208 (1993).  "[W]hether [the employee's] conduct in the abstract constitutes willful misconduct is a mixed question of fact and law and is reviewable by this Court on appeal."  Id. at 333, 437 S.E.2d at 209.

Dan River alleges that Giggetts was driving too fast for the given weather conditions on the morning of his accident and that he failed to properly use the truck's braking and steering systems. Dan River contends that this conduct constituted a violation of Federal Motor Carrier Safety Regulations.[1] We disagree.

The evidence in the record supports the commission's finding that Giggetts was not exceeding the speed limit. The posted speed limit on the road on which Giggetts was traveling was fifty-five miles per hour. Giggetts testified that he was traveling forty miles per hour because of patchy fog. Although Giggetts' speed was disputed by the employer, the commission resolved this fact in favor of Giggetts and, because the evidence supports that conclusion, we will not disturb that finding on appeal. Southwest Tire, Inc. v. Bryant, 31 Va. App. 655, 661, 525 S.E.2d 563, 566 (2000).

The evidence also supports the commission's finding that Giggetts was "performing with the caution necessary under the conditions," and properly used the vehicle's braking and steering systems, as required by the Federal Motor Carrier Regulations. Giggetts testified that he was traveling below the posted speed limit because of the fog he had encountered and

---

[1] The parties stipulated that Dan River had adopted the Federal Motor Carrier Regulations as company rules, and Giggetts testified that he had received training pertaining to the regulations.

that, when he entered the last patch of fog before the accident, he had slowed down. Although he was unable to stop in time to avoid the accident that occurred, the conduct described does not constitute a willful violation of a safety regulation.

Even were we to conclude that the weather conditions Giggetts encountered dictated a lesser speed, his conduct, at most, may be characterized as negligent. However, negligence alone, even gross negligence, will not support a finding of willful misconduct. Buzzo, 17 Va. App. at 332, 437 S.E.2d at 208; Spruill v. C.W. Wright Constr. Co., 8 Va. App. 330, 334, 381 S.E.2d 359, 361 (1989).

## II.

### Injury Arising Out of Employment

Dan River next alleges that Giggetts' injury did not "arise out of" his employment. See Code § 65.2-101. We disagree.

An injury arises out of one's employment if there is a causal connection between the injury and the "conditions under which the work is required to be performed." Metcalf v. A.M. Express Moving Sys., Inc., 230 Va. 464, 468, 339 S.E.2d 177, 180 (1986). Virginia employs the "actual risk test" in determining whether a work-related injury is compensable. County of Chesterfield v. Johnson, 237 Va. 180, 185, 376 S.E.2d 73, 75 (1989). Under this test, "'[t]he causative danger must be peculiar to the work, incidental to the character of the business, and not independent of the master-servant

relationship.'"  Id. at 183-84, 376 S.E.2d at 75 (citation omitted).  The test excludes injuries "'which the employee would have been equally exposed to apart from the employment.'"  Id. at 183, 376 S.E.2d at 75 (citation omitted).

Giggetts' job required him to be on the road in the early morning hours, driving a tractor-trailer truck during foggy conditions, exposed to the hazards of driving.  Even if Giggetts' injury resulted from his negligence, he was exposed to the risk of being injured in an accident as a result of his job responsibilities, and the injury he suffered resulted from that risk.  Therefore, we conclude that Giggetts' injury "arose out of" his employment.

III.

Pre-existing Condition

Dan River further alleges that Giggetts' injury was the result of a pre-existing condition and not the result of the November 17 accident.  We find this allegation to be without merit.

The reports submitted by the two treating physicians established that Giggetts' injury was caused by the accident. Giggetts testified that he suffered a minor back injury in February 1996.  However, he sought no medical treatment for the injury and missed no work because of the February 1996 injury. Although the employer's physician reported that Giggetts was suffering from a "spinal stenosis" which was "likely old," he

also reported that Giggetts was suffering from a "small disc herniation."  The employer's physician could not state "with utmost certainty" when the latter injury had occurred.  The commission explicitly stated they found the testimony of the treating physicians to be more persuasive.  Based upon the evidence introduced, the commission made a factual finding that Giggetts' present injury was the result of the accident in question, and not the result of aggravation of his alleged pre-existing condition.  Because the evidence supports this finding, we will not disturb it on appeal.  Ogden Aviation Serv. v. Saghy, 32 Va. App. 89, 101, 526 S.E.2d 756, 762 (2000) (conflicting medical opinions raise questions of fact to be resolved by the commission and if supported by credible evidence, are binding on appeal); WLR Foods, Inc. v. Cardosa, 26 Va. App. 220, 230, 494 S.E.2d 147, 152 (1997) ("'The fact that there is contrary evidence in the record is of no consequence.'" (citation omitted)).

IV.

Marketing Remaining Work Capacity

We also find no merit in the employer's final contention that Giggetts should be denied compensation because he failed to market his remaining work capacity.  In Virginia, an employee is only required to market his or her remaining work capacity if the employee is not totally disabled.  Gandy, 7 Va. App. at 216, 372 S.E.2d at 203.  Here, the commission made a factual finding

that Giggetts was totally disabled from December 28, 1998 to March 9, 1999.  This finding is supported by credible evidence.  Although Giggetts looked for other work during that time period, this fact, alone, is not determinative.  Id.  Therefore, Giggetts' claim is not barred on the ground that he failed to market his remaining work capacity.

For the reasons stated above, we affirm the commission's decision.

Affirmed.