COURT OF APPEALS OF VIRGINIA


Present: Chief Judge Fitzpatrick, Judges Frank and Clements
Argued at Alexandria, Virginia


KENNETH R. OWENS
                                              OPINION BY
v.   Record No. 1898-01-4         JUDGE ROBERT P. FRANK
                                              MAY 28, 2002
YORK (COUNTY OF) FIRE AND RESCUE AND
 VIRGINIA MUNICIPAL GROUP
 SELF-INSURANCE ASSOCIATION


        FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            Michael A. Kernbach (Burgess, Locklin,
            Kernbach & Perigard, on brief), for
            appellant.

            Ralph L. Whitt, Jr. (Michael P. Del Bueno;
            Whitt & Associates, on brief), for appellees.


     Kenneth R. Owens (claimant) appeals a decision of the

Workers' Compensation Commission (commission) denying him

benefits under Code § 65.2-402(B).  Claimant contends the

commission erred when it found his claim did not meet the

requirements of Code § 65.2-406 because he filed the claim more

than two years after he received a diagnosis of an occupational

disease.  For the reasons stated, we affirm the decision of the

commission.

                         BACKGROUND

     Claimant began working for the York County Fire and Rescue

Department in 1973.  Claimant remained employed with the Fire

and Rescue Department until 1999.  He filed a claim for benefits

on October 21, 1999, alleging he had contracted an occupational disease, hypertension.

As part of his employment, claimant was required to have a medical examination once a year. Dr. John D. Hollingsworth conducted the 1995 examination. At that time, claimant had a blood pressure reading of 190/100. He was diagnosed with "hypertension, stage II." Dr. Hollingsworth placed claimant on hypertension medicine, indicating he would discuss treadmill tests with the fire chief "before this patient can be cleared for the Fire Department."

On January 23, 1996, Dr. Bryant examined claimant. Dr. Bryant confirmed Dr. Hollingsworth's diagnosis of "hypertension" and again prescribed hypertension medication. Claimant's blood pressure was 221/110.

Claimant saw Dr. Bryant again on January 25, 1996, and reported he had stopped taking his blood pressure medication because he was "feeling wonderful." At that appointment, his blood pressure was 200/112. Dr. Bryant recommended the same hypertension medication, but at an increased dosage, and advised claimant "he would not be able to work if the [blood pressure] was not well controlled." Dr. Bryant listed claimant's primary problem as "severe hypertension with poor compliance."

Claimant received follow up treatments for hypertension and related illnesses with Dr. Bryant on February 2, 1996, February 8, 1996, March 5, 1996, May 29, 1996, and February 25, 1997.

-

Claimant returned to Dr. Bryant on January 13, 1998.  At that appointment, his blood pressure readings were 240/136, 226/122 and 210/118.  He indicated he had not taken his hypertension medication for months.  Again, the doctor diagnosed severe hypertension.  Dr. Bryant also had a "[l]engthy discussion with [claimant] on the importance of compliance with [medications], diet and exercise."

Claimant testified that prior to his January 13, 1998 appointment with Dr. Bryant, he never received a diagnosis or information from any source, including Dr. Bryant, that he was suffering from hypertension.  When questioned regarding Dr. Bryant's report that he advised claimant in 1996 and 1997 that he had hypertension, claimant denied he was ever told about this disease during that period.  Claimant testified he did not understand he was suffering from hypertension until January 1998, when Dr. Bryant allegedly told him that his hypertension was caused by his work at the fire department and that claimant needed to retire.[1]

During his employment with the fire department, claimant had been president of his local union.  He worked with the International Association of Firefighters and the Virginia Professional Firefighters developing legislation on presumptive

---

[1] The parties agree that Dr. Bryant never causally related claimant's hypertension to his work before January 1998.

-

occupational disease claims.  Claimant testified he was aware, prior to January 1998, that he was afforded special workers' compensation coverage for the disease of hypertension.  Claimant acknowledged he had known for at least fifteen years that hypertension "is a condition that's covered under the presumption under Workers' [Compensation Act] that you as a firefighter would be entitled to."

Claimant further testified he would have filed a claim prior to January of 1998 for hypertension "had [he] been told [he] had it."  Claimant also admitted he knew "hypertension was high blood pressure" and acknowledged he had taken medication for the disease for approximately five years.

Dr. Bryant testified he informed claimant that he had hypertension in early 1996.  Dr. Bryant indicated that he may have used the phrase "high blood pressure" to describe hypertension, but this phrasing would not have suddenly changed in 1998 when claimant alleges he first learned he had hypertension.  The phraseology Dr. Bryant used in discussing his diagnosis with claimant in 1996 would have been the same in 1998.

Dr. Bryant further testified he believed claimant was aware he had hypertension or high blood pressure in January 1996.  The doctor also stated claimant told him in 1996 that he checked his blood pressure himself periodically.

-

The deputy commissioner, noting the medical records indicated claimant was diagnosed with hypertension as early as January 11, 1995, ruled the claim barred by the statute of limitations. The full commission affirmed the deputy commissioner's ruling.

ANALYSIS

Claimant argues the filing of his claim fell within the statutory two-year period established by Code § 65.2-406. Code § 65.2-406(A) states, in part:

> The right to compensation under this chapter shall be forever barred unless a claim is filed with the commission within one of the following time periods:
>
>   *     *     *     *     *     *     *
> 5. For all other occupational diseases [including hypertension], two years after a diagnosis of the disease is first communicated to the employee or within five years from the date of the last injurious exposure in employment, whichever first occurs.

This filing requirement is jurisdictional. Hawks v. Henrico County Sch. Bd., 7 Va. App. 398, 401, 374 S.E.2d 695, 696 (1988); Musick v. Codell Constr. Co., 4 Va. App. 471, 473, 358 S.E.2d 739, 740 (1987) (citing Anderson v. Clinchfield Coal Co., 214 Va. 674, 675, 204 S.E.2d 257, 258 (1974)). "Moreover, the burden is upon the claimant to prove compliance with the statute." Hawks, 7 Va. App. at 401, 374 S.E.2d at 697.

"Whether a diagnosis of an occupational disease was communicated and when the communication occurred are factual

-

determinations to be made by the commission upon the evidence. Upon appellate review, the findings of fact made by the commission will be upheld when supported by credible evidence." Uninsured Employer's Fund v. Mounts, 24 Va. App. 550, 558, 484 S.E.2d 140, 144 (1997) (citations omitted), aff'd on other grounds, 255 Va. 254, 497 S.E.2d 464 (1998).  See also A. G. Van Metre, Jr., Inc. v. Gandy, 7 Va. App. 207, 215, 372 S.E.2d 198, 203 (1988).  The commission's factual findings will not be overturned unless plainly wrong or without evidence to support them.  Dan River, Inc. v. Giggetts, 34 Va. App. 297, 302, 541 S.E.2d 294, 296 (2001).

A.   Communication of Hypertension Diagnosis

The commission found claimant was diagnosed with hypertension more than two years prior to the filing of his claim, explaining:

> As found by the Deputy Commissioner, the claimant's testimony regarding his diagnosis of hypertension . . . lacks credibility.
>
> *     *     *     *     *     *     *
>
> The claimant testified that he was entirely unaware that he suffered from "hypertension," until January 1998.  He even testified that he did not know he had "high blood pressure" until 1998.  The medical records strongly suggest to [sic] the contrary.  He also appears to suggest, however, that Dr. Bryant's use of the term "high blood pressure," rather than "hypertension," may have confused or misled him into believing that he did not have compensable "hypertension."  However, he acknowledged in later testimony that he was

-

> aware that the terms "hypertension" and
> "high blood pressure" were synonymous.
>
> Therefore, the claimant's testimony to the
> contrary notwithstanding, we find that he
> was diagnosed as suffering from
> "hypertension" in January 1995, and received
> a communication of diagnosis of this
> condition on multiple occasions in 1996 and
> 1997.

Claimant contends a diagnosis of "high blood pressure" is not a diagnosis of "hypertension" under Code § 65.2-402(B). Therefore, he argues, the diagnosis of an occupational disease was not "first communicated" to him until 1998, at which point the statute of limitations should have started running. See Code § 65.2-406(A)(5). However, credible evidence supports the commission's finding that claimant was diagnosed with hypertension as early as 1995. See Dan River, Inc., 34 Va. App. at 302, 541 S.E.2d at 296.

Claimant's own testimony proved he knew "hypertension was high blood pressure." Even if he did not, "a physician is not required to utilize precise medical terminology to communicate the existence of occupational disease in order to trigger the obligation to file a claim." Hawks, 7 Va. App. at 403, 374 S.E.2d at 697 (finding an employee received communication of the occupational disease interstital fibrosis when a doctor informed the employee that he had "scarring" of the lungs).

Dr. Hollingsworth's report diagnosed claimant with "hypertension, stage II" in January 1995. He prescribed

-

medication to control the condition and recommended treadmill tests before allowing claimant to resume his duties at the fire department. Claimant admits he began taking the medication around that time. This evidence supports the commission's finding that claimant knew in 1995 he had hypertension and should have filed his claim with the commission earlier.[2] See Uninsured Employer's Fund, 24 Va. App. at 558, 484 S.E.2d at 144.

Additionally, Dr. Bryant testified, and his records show, he talked to claimant about high blood pressure several times in 1996. Claimant's medical records indicate Dr. Bryant repeatedly diagnosed hypertension, prescribing medications and behavioral changes to bring the condition under control. This evidence supports the commission's finding that a diagnosis of the occupational disease, hypertension, was communicated to claimant more than two years before he filed his claim on October 21, 1999. See Dan River, Inc., 34 Va. App. at 302, 541 S.E.2d at 296.

---

[2] Whether the claim was compensable in 1995 is irrelevant. See Kiser v. Clinchfield Coal Co., 225 Va. 357, 359-60, 302 S.E.2d 44, 45-46 (1983) (finding a claim must be filed when a diagnosis of an occupational disease is communicated to an employee, whether or not he believes at that time that the claim will result in any award of benefits).

B.  Communication of Workplace Relationship

Claimant also argues the causal connection between his hypertension and his workplace was not communicated to him until January 1998.  Therefore, he maintains, the two-year statute of limitations did not begin to run until that time.

Claimant is correct in claiming Code § 65.2-406(A)(5) requires communication of two distinct facts:  (1) a diagnosis of the disease; and (2) the disease is an "occupational disease."  Code § 65.2-400 defines an "occupational disease" as "a disease arising out of and in the course of employment, but not an ordinary disease of life to which the general public is exposed outside of the employment."

A diagnosis of an occupational disease is not completely communicated to an employee until he receives information indicating the disease is "one 'arising out of and in the course of the employment.'"  Garrison v. Prince William County Bd. of Supervisors, 220 Va. 913, 917, 265 S.E.2d 687, 689 (1980) (citing Code § 65.1-46, a previous version of Code § 65.2-400) (holding the statute of limitations did not bar a claim filed in 1978, where the employee was told he had hypertension in 1975, but he was not told hypertension arose out of and in the course of his employment).  The determinative issue here, therefore, is

-

whether the diagnosis of hypertension[3] as an "occupational disease" was communicated to claimant prior to October 21, 1997, two years before the filing of his claim.

It is undisputed that no physician communicated to claimant that a nexus existed between his hypertension and his job prior to the appointment with Dr. Bryant in January 1998.[4] However, this fact does not end our inquiry. We must determine when claimant was informed that hypertension is an occupational disease.

We have previously held communication of an occupational disease need not come from a medical doctor. In Ratliff v. Dominion Coal Co., 3 Va. App. 175, 179, 349 S.E.2d 147, 149 (1986), this Court held a letter from the United States Department of Labor, informing a miner that he was disabled under the Black Lung Benefits Act, constituted "a medical determination of total disability due to pneumoconiosis" and

---

[3] Code § 65.2-402(B), in part, states:

> Hypertension or heart disease causing the death of, or any health condition or impairment resulting in total or partial disability of (i) salaried or volunteer firefighters . . . shall be presumed to be occupational diseases [sic], suffered in the line of duty, that are covered by this title unless such presumption is overcome by a preponderance of competent evidence to the contrary.

[4] In fact, Dr. Bryant denies ever informing claimant that his hypertension was caused by his employment as a firefighter.

-

triggered the running of the Virginia statute of limitations for workers' compensation benefits. This Court rejected Ratliff's argument "that the Department of Labor letter was an administrative or legal determination, but not a 'medical determination.'" Id. This Court further explained that Ratliff knew or should have known after receiving the letter that, although the letter referred to federal standards, "it was, nevertheless, incumbent upon Ratliff to file a Virginia claim" of disability due to pneumoconiosis within three years of receiving the letter.[5] Id. at 180, 349 S.E.2d at 149-50.

Claimant contends the commission misconstrued our decision in City of Alexandria v. Cronin, 20 Va. App. 503, 458 S.E.2d 314 (1995), aff'd, 252 Va. 1, 471 S.E.2d 184 (1996). However, the

---

[5] At the time Ratliff was decided, the statute of limitations for filing a claim was controlled by former Code § 65.1-52, which read:

> The right to compensation under this chapter shall be forever barred unless a claim be filed with the Industrial Commission within one of the following time periods:
>
> 1. For coal miners' pneumoconiosis, three years after a diagnosis of the disease is first communicated to the employee or within five years from the date of the last injurious exposure in employment, whichever first occurs.

(Emphasis added.)

commission correctly applied Cronin.  In fact, we find Cronin is dispositive of this case.

In Cronin, Cronin received a formal diagnosis of coronary heart disease in October 1989 and soon thereafter filed with the city for service-connected disability retirement from his job as a firefighter.  Id. at 505, 458 S.E.2d at 315.  Cronin died on February 22, 1992, and his estate filed a claim for benefits with the commission.  Id. at 506, 458 S.E.2d at 315.  The commission concluded Cronin's estate was not barred by the limitation period because Cronin was "not 'medically advised that his condition was causally related to his work.'"  Id. at 507, 458 S.E.2d at 316 (citing the commission's decision).

In overturning the commission, this Court held:

> By interpreting the statute as requiring proof of a communication by a physician of the employee's occupational disease, the commission ignores the fact that, while many employees may receive a diagnosis of his or her disease from a physician, the claimants may receive the communication that such a disease is a compensable occupational disease from someone other than a physician, often an attorney or someone in charge of personnel or administering benefits.  The commission's ruling overlooks practical experience under the Act and the fact that the compensability of an occupational disease is a creation of the legislature.  A physician's diagnosis of an employee's condition is not dispositive on the issue of compensability and physicians often reach different conclusions about a condition's origin.
>
> *       *       *       *       *       *       *

-

> Neither this Court nor the Supreme Court of
> Virginia has interpreted Code
> § 65.2-406(A)(5) as requiring a
> communication from a physician to trigger
> the running of the limitations period.  We
> hold that Code § 65.2-406(A)(5) does not
> require that an employee receive from a
> physician a communication that his disease
> is work related; rather, the statute only
> requires that the employee, simultaneously
> with or sometime after the diagnosis of his
> condition, learn that the condition is an
> occupational disease for which compensation
> may be awarded.  See Ratliff v. Dominion
> Coal Co., 3 Va. App. 175, 349 S.E.2d 147
> (1986).

Id. at 508-09, 458 S.E.2d at 316-17.  The Court concluded,

"Cronin received a medical diagnosis of his heart condition and

acted upon such diagnosis to receive service-connected

disability benefits.  This action proved that Cronin was

informed for purposes of the statute."  Id. at 510, 458 S.E.2d

at 317.

As in Cronin, claimant here was not informed by a doctor

that his hypertension was work-related.[6]  However, claimant had

known for ten to fifteen years that hypertension is an

occupational disease which is presumptively compensable under

Code § 65.2-402(B).  He had lobbied for legislation to enact

that presumption.  He was aware, prior to his diagnosis, that

his work as a firefighter afforded him special workers'

---

[6] In fact, Dr. Bryant testified he did not believe
claimant's hypertension was causally related to his work, and
the deputy commissioner found the presumption in Code
§ 65.2-402(B) was rebutted.

-

compensation coverage for hypertension.  Most significantly,

claimant testified that if a doctor had diagnosed him with

hypertension prior to January 1998, he would have filed his

claim earlier, suggesting he knew such a diagnosis was an

occupational disease.  This testimony also belies claimant's

contention that he only had a "general knowledge" of the

compensability of hypertension.

The commission found claimant's testimony that he did not

know his hypertension was presumptively an occupational disease

"lacked credibility."  The evidence supports this conclusion.

See Uninsured Employer's Fund, 24 Va. App. at 558, 484 S.E.2d at

144.  Overall, claimant's testimony actually underscored the

fact that he did know hypertension was a presumptively

compensable occupational disease.[7]

As in Cronin, claimant "receive[d] the communication that

such a disease is a compensable occupational disease from

someone other than a physician."  20 Va. App. at 508, 458 S.E.2d

at 316.  He had this knowledge when the diagnosis was

communicated to him, as he had known hypertension was an

---

[7] Claimant further contends that, since Code § 65.2-402(B) requires "total or partial disability" as a condition for the presumption to arise, he could not have filed his claim until February 5, 1998, when he became disabled.  We will not consider this issue because it was not before the deputy commissioner or the full commission.

-

occupational disease for at least fifteen years prior to the diagnosis.

The evidence supports the commission's findings that a diagnosis of an occupational disease was communicated to claimant as of January 1995.  Therefore, his October 1999 filing falls far outside the two-year statute of limitations set forth in Code § 65.2-406(A)(5).  We conclude that the source of the communication of occupational disease is immaterial as long as claimant learned "that the condition is an occupational disease for which compensation may be awarded."  Id. at 509, 458 S.E.2d at 317.

For the reasons stated above, we affirm the decision of the commission.

                                                    Affirmed.