515 S.E.2d 800

**VAUGHAN'S LANDSCAPING & MAINTENANCE and Virginia Farm Bureau Fire & Casualty Insurance Company**

v.

**Timothy Jason DODSON.**

**Record No. 1667–98–4.**

Court of Appeals of Virginia,
Alexandria.

June 29, 1999.

Kevin M. Rose (Wharton, Aldhizer & Weaver, P.L.C., on brief), Harrisonburg, for appellants.

Jerry O. Talton for appellee.

Present: BRAY, J., and DUFF and OVERTON, Senior Judges.

OVERTON, Senior Judge.

Vaughan's Landscaping & Maintenance and its insurer (hereinafter referred to as "employer") appeal a decision of the Workers' Compensation Commission ("commission") awarding benefits to Timothy Jason Dodson ("claimant"). Employer contends the commission erred in finding that claimant proved he sustained an injury by accident while in the course of his employment. Specifically, employer argues that at the time of claimant's accident (1) his transportation was neither "employer-provided" nor incidental to his employ-

ment; and (2) his severe intoxication removed him from the course of his employment. Because we find that claimant's severe intoxication had removed him from the course of his employment at the time of his accident, we reverse the commission's decision awarding benefits.

■ On appeal, we view the evidence in the light most favorable to the prevailing party below. *See R.G. Moore Bldg. Corp. v. Mullins*, 10 Va.App. 211, 212, 390 S.E.2d 788, 788 (1990). "A finding by the commission that an injury arose out of and in the course of employment is a mixed finding of law and fact and is properly reviewable on appeal." *Dublin Garment Co. v. Jones*, 2 Va.App. 165, 167, 342 S.E.2d 638, 638 (1986).

Claimant worked for employer as a laborer in its landscaping business, operated by David Vaughan as a sole proprietor. Claimant, then nineteen years old, did not possess a driver's license, and Vaughan agreed to transport him to and from work. Claimant lived in Kendall, Virginia, and Vaughan's home, which served as employer's place of business, was located in Luray, Virginia. At the end of the workday, Vaughan frequently transported claimant to employer's place of business in Luray, rather than taking him directly home. Claimant frequently assisted Vaughan in unloading and servicing employer's lawn equipment, and Vaughan sometimes provided claimant with dinner, after which Vaughan would drive claimant home. Vaughan paid claimant for the entire period of time until they left employer's place of business, with the exception of approximately one-half hour for lunch and one-half hour for dinner.

On Saturday, June 24, 1995, Vaughan picked up claimant at his home. Claimant's normal Saturday work hours were either 8:00 a.m. to noon or 8:00 a.m. to 5:00 p.m. Vaughan drove the company truck and equipment trailer to Compton, Virginia, where he and claimant performed landscaping services. Vaughan testified that after he and claimant completed the Compton job, claimant's work was done for that day. Vaughan and claimant left Compton in Vaughan's truck and

traveled to Bentonville, where Vaughan stopped at a store and purchased beer and wine. Vaughan knew that claimant was under the legal drinking age.

After purchasing the beer and wine, Vaughan drove toward his home in Luray. En route, Vaughan and claimant consumed some of the beer and wine and came upon some mutual friends playing horseshoes on the roadside near the Presgraves' home. They decided to stop, and Vaughan and claimant exited the truck and joined their friends. Vaughan admitted opening another beer at the Presgraves', but he did not know whether claimant continued drinking. Vaughan testified that his stop at the Presgraves' was not work-related but, while there, one of the Presgraves asked him about taking a tree down in the future. Shortly after the two men arrived, claimant argued with someone, and he and Vaughan were asked to leave. Vaughan stated that claimant was then "pretty drunk."

After leaving the Presgraves' home, Vaughan drove toward his home in Luray. Vaughan testified that he intended to either take claimant home or drop him off where he wanted to go. Vaughan did not intend to unload the equipment from his truck when he arrived home, because he intended to perform another job later that day by himself. As Vaughan drove along Route 611 toward Luray, claimant threw a bottle from the car window. Vaughan asked claimant what he was doing and momentarily took his eyes off the road, causing the vehicle to leave the roadway and the passenger side of the vehicle to sideswipe a tree. As a result of the accident, claimant sustained a severe injury to his right arm.

Claimant admitted that he did not ask Vaughan to take him home after completing the Compton job, did not object to Vaughan purchasing the beer and wine and did not object to the stop at the Presgraves' home. Claimant testified that he and Vaughan drank some of the beer and wine, acknowledging that he consumed at least "a couple of beers" and "a bottle of wine" before they arrived at the Presgraves' home. Claimant recalled that he and Vaughan had not then decided whether

they were going to continue to work or whether claimant was "going to town."

Claimant testified that he and Vaughan consumed more alcohol at the Presgraves', and he may have "pitched a game or two" of horseshoes. Although claimant learned after the accident that he had engaged in an argument and had been asked to leave the Presgraves', he did not remember these events. He also could not remember whether he walked to Vaughan's truck, although others had told him he was unable to stand or walk unassisted when he left the Presgraves' home. Claimant did not recall throwing a bottle from the truck window or other events between the time they left the Presgraves' home and the time of the accident and was uncertain whether he would have then been able to operate a lawn mower or bush hog. When asked whether he was then "drunk," claimant responded, "I would say so . . .," admitting intoxication to near unconsciousness.

The medical records revealed that claimant was "intoxicated . . . [and] found combative at the scene. . . ." His blood alcohol level was .21 several hours after the accident.[1]

> [A]n employee may abandon his employment by reaching an advanced state of intoxication which renders the employee incapable of engaging in his duties. This result is not based upon a special statutory defense of intoxication. Rather, a severely intoxicated employee has removed himself from the scope of his employment. Any injuries thereafter suffered are not "in the course of" the employment.

*American Safety Razor Co. v. Hunter,* 2 Va.App. 258, 261, 343 S.E.2d 461, 463 (1986) (citing 1A A. Larson, *The Law of Workmen's Compensation* § 34.21 (1985)).

Here, the commission ruled as follows:

> [claimant] consumed only those alcoholic beverages which were purchased and supplied by Vaughan. We find that [claimant] had not consumed any alcohol or drugs prior to

---

1. Claimant's blood alcohol level of .21 was over two and one-half times the legal limit (0.08) for driving in the Commonwealth of Virginia. *See* Code § 18.2–266.

the start of the work day, nor did he bring any alcohol or drugs to work. At the time of this occurrence, [claimant] was below the legal drinking age, and Vaughan was aware of that fact.

Vaughan was not only the claimant's direct supervisor, but was also the owner and sole proprietor of the business. We find that Vaughan bought wine and beer, and gave it to [claimant] to consume. He thereby illegally promoted and facilitated the under age claimant's consumption of alcoholic beverages. Having provided the alcohol, the employer obviously encouraged and condoned the claimant's conduct, and will not now be heard to assert the claimant's intoxication as a defense to his claim for benefits. We find incredible Vaughan's assertion that he had a rule against drinking on the job.

■■ The commission apparently analyzed the intoxication issue in terms of whether employer met its burden of proving a "willful misconduct" defense. However, the rule cited in *American Razor* is not based upon a "special statutory defense." Rather, under that rule, a claimant's voluntary intoxication may remove the claimant from the scope of his or her employment at the time of the accident when such condition renders the claimant incapable of performing his or her job duties. Stated differently, although a claimant's state of intoxication might not have contributed directly to an accident, the claimant may remove himself or herself from the course of employment by his or her self-induced intoxication. Although the commission made a factual finding that claimant was significantly intoxicated at the time he and Vaughan left the Presgraves' home, the commission failed to address the issue of whether claimant's level of intoxication prevented him from being in the course of his employment at the time of the accident.

■■ Based upon the testimony of Vaughan and claimant and the evidence of claimant's .21 blood alcohol level at 7:30 p.m., approximately five to six hours after he began drinking and approximately two hours after the accident, we find as a matter of law that at the time of the accident, claimant's

intoxication rendered him incapable of performing his job duties, assuming he had any duties remaining that day.

Claimant's job required that he operate a bush hog, a weed eater, and mowing equipment, and that he perform other strenuous activities. Claimant admitted that he was drunk when he left the Presgraves' home, acknowledging that he was then on the verge of unconsciousness. Claimant could not walk or stand on his own, and could not remember the argument at the Presgraves' home or any subsequent events until he regained consciousness in the hospital several days later.

The totality of the evidence proved that claimant's severe intoxication, resulting from the willing consumption of alcohol while not engaged in any work-related duty or function, effectively removed him from the scope of his employment hours before the accident. Accordingly, the injury he sustained as a result did not occur in the course of his employment, and therefore, is not compensable.

Because our ruling is dispositive of this appeal, we need not address the remaining issue raised by employer. For the reasons stated, we reverse the commission's decision.

*Reversed.*