COURT OF APPEALS OF VIRGINIA

Present:   Judges Petty, Russell and Malveaux
Argued at Richmond, Virginia

ANDERSEN INTERIOR CONTRACTING,
 STRUCTURE TONE, INC. AND
 ARCH INSURANCE COMPANY
                                                    MEMORANDUM OPINION* BY
v.        Record No. 1286-16-2          WESLEY G. RUSSELL, JR., JUDGE
                                                         FEBRUARY 21, 2017
SAMUEL NIMMO


FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

        Tenley Carroll Seli (Lynch & Cornett, P.C., on brief), for appellants.

        Sean P. Kavanagh (Harbison & Kavanagh, PLLC, on brief), for
        appellee.


        Andersen Interior Contracting, Structure Tone, Inc., and Arch Insurance Company

(collectively "employer")[1] appeal the decision of the Virginia Workers' Compensation

Commission finding a compensable injury and awarding appellee Samuel Nimmo ("claimant")

lifetime medical benefits.  For the reasons that follow, we affirm the Commission.

BACKGROUND

        "On appeal from a decision of the Workers' Compensation Commission, the evidence

and all reasonable inferences that may be drawn from that evidence are viewed in the light most

favorable to the party prevailing below."  Artis v. Ottenberg's Bakers, Inc., 45 Va. App. 72, 83,

_____

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

        [1] Structure Tone was the general contractor for the construction of a Microsoft facility in
Boydton, Virginia.  Andersen Interior Contracting was a subcontractor on the project and
obtained workers' compensation coverage for its employees through Structure Tone's policy
with Arch Insurance.

608 S.E.2d 512, 517 (2005) (*en banc*). Accordingly, because he prevailed before the Commission on the issues pertinent to this appeal, we review the evidence in the light most favorable to claimant.

Structure Tone was the general contractor and Andersen Interior Contracting served as one of its subcontractors regarding the construction and finishing of a Microsoft facility in Boydton, Virginia. At the time of the claimed injury, claimant had been an employee of employer for three weeks, working Monday through Saturday. His shifts began at 6:30 a.m.

As part of his employment, claimant was required to attend an orientation, during which employees were informed of applicable workplace policies. The policies included safety rules related to drug and alcohol use. Specifically, the policies "prohibit[ed] the use, possession or distribution on its premises, facilities or work places of drugs, drug paraphernalia, alcohol or intoxicants" and expressly stated that "[w]orkers must not report for duty under the influence of any other drug, alcoholic beverage, intoxicant or narcotic . . . ." The prohibition was part of a "Zero Tolerance" policy, which included "drug and alcohol use, possession, or distribution" as activities that would be subject to "zero tolerance." To enforce these rules, the policy also provided that "[s]ubstance abuse screening on this project is required post-accident/post-incident" and that a violation "may result in immediate removal from the project."

On May 7, 2015, claimant signed an Employee Orientation Information Sheet, and initialed the form's acknowledgment of the drug and alcohol policy, which stated "I acknowledge that the sale, possession or use of illegal drugs . . . or alcohol during the working shift, or reporting to work under the influence of illegal drugs or alcohol, is strictly prohibited and a dischargeable offense." Investigations were conducted after every accident or "near-miss" scenario and involved drug and alcohol testing.

On May 21, 2015, claimant reported to work at his scheduled time of 6:30 a.m. He was assigned to a "clean room"[2] housing electrical equipment, where he was installing acoustical ceiling tiles. As part of his duties, he was using a ten-foot A-frame ladder. He took his usual 9:00 a.m. break. When he returned, he stopped at a work station where he put on slip covers for his boots and continued over a protected floor to where he had been working. He returned to where he had set his ladder, put on his safety harness, and began to climb up the ladder. Once he reached five or six steps up the ladder, the ladder "skidded or shifted . . . wobbled a little bit and then . . . hit completely sideways." The ladder moved before claimant was able to secure his harness. According to claimant, "[w]hen the ladder kicked[,] it threw my feet sideways and I come down on the floor."

Claimant's fall resulted in injuries to his right wrist and elbow, two fractured ribs, and a punctured lung. He had no problems using the ladder that morning prior to the incident, and the ladder was placed on the floor, which claimant noted had no defects, was flat, and was dry.

Claimant admitted to drinking three to six beers and some liquor most nights and to consuming alcohol the night before the accident. He stated that he drank six or seven beers, but stopped drinking by 11:00 p.m. or midnight. He denied drinking any alcohol on the morning of the 21st, but noted that he did have some coffee but nothing to eat. He had taken no medications or drugs. After falling, claimant was taken to the hospital, and upon release, was taken to an occupational health center for blood and urine samples. Claimant was not tested on site due to the severity of his injuries, which required immediate medical care. The test results indicated

---

[2] A "clean room" is a room in which expensive computer equipment is housed. Accordingly, the construction crews were to take additional steps to keep the room "clean" during construction because the equipment "do[es] not tolerate any dust, any water, any debris, any moisture, anything of that sort inside of them."

claimant had alcohol in his system at the time of the test. Employer terminated claimant's employment later that day.

On June 9, 2015, claimant filed with the Commission a claim for benefits. Specifically, claimant sought medical benefits for his injuries and continuing temporary total disability benefits commencing May 22, 2015.

Employer defended the claim, asserting that claimant, because of his intoxication, was barred from receiving benefits based on his willful misconduct, his violation of a safety rule, and Code § 65.2-306. Employer further contended that claimant was not entitled to lost wage benefits from June 10 through July 20, 2015, because he had been terminated for cause.

On November 12, 2015, the parties submitted a pre-hearing statement order regarding the claim. In it, they agreed to several facts, including claimant's employment status, that claimant fell at work and the nature of his resulting injuries, his inability to work from May 22 to June 9, 2015, his return to light-duty capacity on June 10, and his release to full duty on July 20, 2015.

A deputy commissioner conducted a hearing on the matter on November 16, 2015. The parties' stipulations were read into the record. The deputy heard testimony from claimant; a toxicology expert, Dr. Wolfe, retained by the employer; the worksite's project safety manager; and a foreman for Andersen's portion of the project. Additionally, employer submitted a report from another toxicology expert, Dr. Holstege. The report was before the deputy commissioner for review and referenced in the deputy commissioner's opinion. Employer's orientation materials and claimant's medical records from the day of the accident also were entered into evidence.

The evidence established that claimant had his blood drawn at 3:39 p.m. on May 21st, approximately six hours after the accident. At that time, "[claimant] had alcohol in his blood at the time [his] specimen was collected on May 21st, 2015 at . . . 3:39 p.m." Based on the lab

- 4 -

report, claimant had a blood alcohol content (BAC) of at least 0.02 at the time his blood was drawn. Based on evidence provided by employer's expert toxicologists, the deputy commissioner concluded that claimant's BAC at the time of the accident was between 0.09 and 0.17 and that the presumption of Code § 65.2-306(B) applied.[3]

With claimant's level of intoxication established, employer focused on how that level of intoxication would have affected claimant's abilities. Dr. Wolfe testified that claimant's level of intoxication at the time of the accident would have dulled claimant's senses such as vision, touch, and perception and would have caused a loss of reasoning ability, self-control, alertness, reflexes, and reaction time. Dr. Wolfe opined that claimant's intoxication "impaired his ability to work safely as a construction worker" and would have rendered him unable to climb a ladder safely. Dr. Wolfe testified that "I can't say that [claimant's intoxication] did cause him to fall from the ladder, but it was [] a proximate cause to his fall." He explained that claimant's intoxication "potentially could have" contributed to the extent of claimant's injuries. On cross-examination, Dr. Wolfe conceded that individuals have varying tolerance levels so that

---

[3] In pertinent part, Code § 65.2-306(B) provides that

> if the employer raises as a defense the employee's intoxication . . . and there was at the time of the injury an amount of alcohol . . . in the bodily fluids of the employee which . . . is equal to or greater than the standard set forth in § 18.2-266, . . . there shall be a rebuttable presumption . . . that the employee was intoxicated due to the consumption of alcohol . . . at the time of his injury. The employee may overcome such a presumption by clear and convincing evidence.

Here, the deputy commissioner (and later the full Commission) found that claimant's BAC at the time of the accident exceeded the standard set forth in Code § 18.2-266 and that claimant had not rebutted the statutory presumption. Accordingly, based on the presumption, the record establishes that claimant "was intoxicated due to the consumption of alcohol . . . at the time of his injury." Notably, the presumption establishes only that the intoxication was the result of claimant's consumption of alcohol; *there is no statutory presumption that this level of intoxication was a proximate cause of claimant's accident or injuries.*

alcohol affects them differently, and he reiterated that he "couldn't say if it made him fall off the ladder or caused him to fall off . . . ."

As a supplement to Dr. Wolfe's testimony, employer relied on the report from Dr. Holstege. In addition to opining that claimant was intoxicated at the time of the accident, Dr. Holstege unequivocally concluded that claimant's level of intoxication prevented claimant from being "able to safely climb a ladder" and that claimant's fall from the ladder was caused by his intoxication.

Employer's project safety manager testified to the investigation that followed claimant's fall. The area was secured, and the ladder and floors were inspected. Because the area in which claimant was working was a "clean room," extra precautions were taken to maintain its cleanliness, including the use of boot scrapers and covers with traction on the bottom, and ensuring all tools were clean prior to entry. The safety manager indicated that, based on the condition of the area after the accident, it was difficult to determine what caused the accident, but that upon learning of claimant's blood test results, "it was pretty obvious at that point that the incident, [claimant's] fall was caused by the level of intoxication the morning of the incident." He stated that it was his first experience with someone falling off a ladder on the job. He explained that there was some suspicion of alcohol as a factor during the investigation, but that he did not consider alcohol to be the cause until after the test results had been received. The manager further testified that claimant subsequently was banned from the project and that his employment was terminated effective immediately for violating employer's zero tolerance policies.

Andersen's project foreman did not see the fall, but testified that he found claimant on the floor with the ladder next to him. He examined the area to determine the cause of the accident. He did not notice anything wrong with the floor; it was not wet. He noted that he had suspicions

of alcohol use. The foreman testified that, because of employer's zero tolerance policy, claimant was terminated immediately after the blood test results were obtained.

The deputy commissioner issued her decision on December 14, 2015. The deputy commissioner accepted the parties' stipulations and further found that there was nothing wrong with the clean room floor and that it was dry. The deputy commissioner noted claimant was released to light duty on June 10, 2015.

As noted above, the deputy commissioner found that claimant was intoxicated at the time of the accident and applied the presumption provided for in Code § 65.2-306(B). Nevertheless, the deputy commissioner noted that, in addition to establishing intoxication, employer had the burden of proving "that an employee's intoxication was the actual cause of the injury. The mere fact that the employee was intoxicated is not sufficient to preclude an award of compensation benefits." The deputy commissioner ultimately found that employer did not meet its burden. In making this determination, the deputy commissioner noted that she found "it significant that no one from either Andersen or Structure Tone witnessed the claimant's accident" and that she "accept[ed] the claimant's testimony that no one from his employer or the general contractor told him they thought he was intoxicated." The deputy commissioner highlighted that there was "no evidence from any employee or witness that they observed the claimant and noticed . . . [an] inability to walk or maneuver the ladder in question," and she "accept[ed] the claimant's testimony that he had no problems negotiating the ladder . . . ." In short, the deputy commissioner concluded that employer had not established that intoxication was a proximate cause of claimant's fall and resultant injuries.

The deputy commissioner acknowledged employer's safety rule and found that claimant had knowledge of the alcohol policies, but found, based on her factual finding regarding causation, "that the claimant's breach of the employer's policy did not cause his injuries."

Although claimant was terminated for his violation of the alcohol policies, the deputy commissioner "[did] not find that the claimant's termination rose to the level of justified cause to forever preclude the claimant from receiving compensation during [his] partial incapacity." Based on her findings, the deputy commissioner awarded claimant a lifetime medical award for his right wrist and elbow, ribs, and punctured lung; temporary total disability benefits from May 22, 2015 through June 9, 2015, when he was totally disabled; and temporary partial disability benefits from June 10, 2015 through July 20, 2015, when he was in a light-duty status without work.

On December 16, 2015, employer filed a request for review by the full Commission. On July 6, 2016, the Commission issued its decision, affirming in part and reversing in part the decision of the deputy commissioner. Regarding the proceedings before the deputy commissioner, the Commission "incorporate[d] by reference and adopt[ed] the Deputy Commissioner's summary of the evidence and testimony as [its] own."

Based on those factual findings, the Commission agreed that claimant's lifetime medical benefits and temporary total disability benefits from May 22, 2015 through June 9, 2015, were not barred by claimant's intoxication/willful violation of a safety rule because employer failed to prove that claimant's intoxication was a cause of the accident.[4] In explaining its decision regarding intoxication, the Commission cited to educational materials produced by Clemson University that state that alcohol is lethal when a person's BAC is between 0.40 and 0.50. Regarding causation, the Commission noted that falls from ladders are common in the workplace

---

[4] One commissioner dissented, concluding that he would have reversed the award of medical benefits as well as the disability payments. He concluded, "[f]rom this record, I find no credible explanation for the claimant's accident other than that it was the direct result of his inebriated state." The dissenting commissioner emphasized the lack of any other causal elements, *i.e.*, that there were no defects in the ladder or floor and that "claimant offered no insight as to why the ladder would have" "spontaneously 'skidded,' 'shifted,' 'wobbled,' went completely sideways,' and ultimately kicked out from under him, thus causing his fall."

and occur in the absence of intoxication, citing regulations of the Occupational Safety and Health Administration, data compiled by the Centers for Disease Control and Prevention, National Institute for Occupational Safety and Health (NIOSH), and our decision in Basement Waterproofing & Drainage v. Beland, 43 Va. App. 352, 597 S.E.2d 286 (2004).

Having affirmed the deputy commissioner's decision regarding these benefits, the Commission reversed the award to claimant of "temporary total and temporary partial disability benefits awarded by the Deputy Commissioner from June 10, 2015 through July 20, 2015." Specifically, the Commission found that employer legitimately terminated claimant for his wrongful act, and therefore, he was not entitled to continued wage benefits during the period of his partial disability.

Employer noted its appeal of the Commission's determination of compensability and award of medical benefits. On appeal, employer presents the following assignments of error:

> 1. The Commission erred, as a matter of fact and law, in holding that credible evidence proved that the claimant's intoxication at work on May 21, 2015 was not the proximate cause of his fall.
>
> 2. The Commission erred, as a matter of fact and law, in holding the claimant's intoxication at work on May 21, 2015 did not bar him from receiving benefits under the Act pursuant to Va. Code § 65.2-306(A)(3).
>
> 3. The Commission erred, as a matter of fact and law, in holding that the claimant's intoxication at work on May 21, 2015 did not bar him from receiving benefits under the Act pursuant to Va. Code § 65.2-306(A)(5) due to his willful breach of a reasonable safety rule adopted by the employer and brought to his knowledge prior to the accident.
>
> 4. The Commission impermissibly relied upon statistics and information not entered into evidence at hearing and not reasonably inferred from the evidence submitted into the record in reaching its decisions on causation in the Opinion of July 6, 2016.

ANALYSIS

It is well settled that "we are bound by the [C]ommission's findings of fact as long as 'there was credible evidence presented such that a reasonable mind could conclude that the fact in issue was proved,' even if there is evidence in the record that would support a contrary finding." Artis, 45 Va. App. at 83-84, 608 S.E.2d at 517 (quoting Westmoreland Coal Co. v. Campbell, 7 Va. App. 217, 222, 372 S.E.2d 411, 415 (1988)). "The scope of a judicial review of the fact finding function of [the C]ommission is [] 'severely limited . . . .'" Georgia-Pacific Corp. v. Robinson, 32 Va. App. 1, 5, 526 S.E.2d 267, 268 (2000) (quoting Metropolitan Cleaning Corp. v. Crawley, 14 Va. App. 261, 266, 416 S.E.2d 35, 38 (1992)). Even if we would have decided a factual issue differently, "we will not substitute our judgment for that of the trier of fact." Boys & Girls Club of Va. v. Marshall, 37 Va. App. 83, 90, 554 S.E.2d 104, 107 (2001) (quoting Goodyear Tire & Rubber Co. v. Harris, 35 Va. App. 162, 171, 543 S.E.2d 619, 623 (2001)); see also Code § 65.2-706 ("The award of the Commission . . . shall be conclusive and binding as to all questions of fact."). We may set aside a factual finding of the Commission only if it is "plainly wrong or without evidence to support" it. Owens v. York Fire & Rescue, 38 Va. App. 354, 359, 564 S.E.2d 150, 152 (2002).

I. Intoxication as a Proximate Cause

Employer's first three assignments of error all turn on the same issue: the Commission's determination that the evidence did not establish "that intoxication . . . caused the claimant's fall

and injuries on May 21, 2015." Thus, the three assignments of error challenge a finding of the Commission on a question of causation.[5]

As such, employer challenges a factual conclusion of the Commission. Ivey v. Jerry J. Puckett Constr. Co., 230 Va. 486, 488, 338 S.E.2d 640, 641 (1986) (holding that whether intoxication is a proximate cause of a work accident is a question of fact). As noted above, we are bound by such a conclusion unless it is "plainly wrong or without evidence to support" it. Owens, 38 Va. App. at 359, 564 S.E.2d at 152.

## A. Causation Generally

Initially, the burden is on a claimant to prove how an accident occurred and that the accident proximately caused his injuries. Liberty Mut. Ins. Corp. v. Herndon, 59 Va. App. 544, 555-56, 721 S.E.2d 32, 38 (2012) (citing Southland Corp. v. Parson, 1 Va. App. 281, 283-84, 338 S.E.2d 162, 163 (1985)); see also PYA/Monarch & Reliance Ins. Co. v. Harris, 22 Va. App. 215, 224-25, 468 S.E.2d 688, 692 (1996).

Here, the Commission considered claimant's testimony, the testimony of the other witnesses, and drew permissible inferences under our decision in Beland, 43 Va. App. at 360, 597 S.E.2d at 290 ("Ladders, in and of themselves, are dangerous, and accidents involving ladders cannot be properly evaluated without taking into consideration the increased risk."). Based on all of this, the Commission concluded that the evidence established that claimant had

---

[5] Employer's first assignment of error is framed in the negative: "[t]he Commission erred . . . in holding that credible evidence proved that the claimant's intoxication . . . was *not* the proximate cause of his fall." This formulation indicates a misunderstanding of intoxication as an affirmative defense. As will be discussed more fully below, it was not claimant's burden to show that intoxication was not a proximate cause of his fall; it was employer's burden to establish that claimant was intoxicated and that the intoxication *caused* the accident and resultant injuries.

suffered an injury by accident arising out of and in the course of his employment.[6]  Thus, absent

some bar to recovery, claimant has established an injury by accident entitling him to benefits.

B.  Employer's Statutory Defenses

With the workplace accident established, employer sought to avoid liability by invoking

statutory defenses available under Code § 65.2-306(A).  Code § 65.2-306(A) provides, in

pertinent part, that "[n]o compensation shall be awarded to the employee . . . for an injury or

death *caused* by: . . . [t]he employee's intoxication . . . [or] [t]he employee's willful breach of

any reasonable rule or regulation adopted by the employer and brought, prior to the accident, to

the knowledge of the employee . . . ."  (Emphasis added).  Because the defenses found in

Code § 65.2-306(A) are affirmative defenses, employer bears the burden of proof regarding

them.  See Code § 65.2-306(B) ("The person or entity asserting any of the defenses in this

section shall have the burden of proof with respect thereto."); Layne v. Crist Elec. Contr., Inc.,

64 Va. App. 342, 349, 768 S.E.2d 261, 264 (2015).

Here, the Commission found that employer had proven that claimant was intoxicated at

work, that employer had a safety rule, known by the employee, prohibiting employees from

being at work while under the influence of alcohol, and that claimant willfully violated that

safety rule.  All of these findings were supported by credible evidence in the record, and

therefore, are binding on appeal.  Artis, 45 Va. App. at 83-84, 608 S.E.2d at 517.

These factual findings, while necessary to establish the affirmative defenses provided for

in Code § 65.2-306(A)(3) & (5), are not sufficient to entitle employer to the bar the statutory

---

[6] At oral argument, employer conceded that, under Beland, proof of a fall from a ladder provides a sufficient basis for the Commission to infer that a claim is compensable unless the claim is otherwise barred.

- 12 -

defenses potentially provide.[7]  Under the plain language of Code § 65.2-306(A), employer had to establish that the intoxication/willful violation of the safety rule "caused" claimant's injuries—in this case that his intoxication was a proximate cause of his fall from the ladder.  See Am. Safety Razor Co. v. Hunter, 2 Va. App. 258, 263-64, 343 S.E.2d 461, 464 (1986) ("Proving intoxication, however, was but a first step in establishing the affirmative defense [of intoxication].  *The employer must also prove that this intoxication proximately caused [claimant's] injury.*" (emphasis added)); Owens Brockway & Nat'l Union Fire Ins. Co. v. Easter, 20 Va. App. 268, 271, 456 S.E.2d 159, 161 (1995) (holding that, for the bar of Code § 65.2-306(A)(5) to apply, an employer "ha[s] the burden to prove that claimant's conduct, *which caused his injury*, was in 'willful' disregard of a reasonable rule established by employer of which claimant was knowledgeable" (emphasis added)).

Here, the Commission concluded that employer failed to carry its burden on causation.  As the trier of fact, the Commission was entitled to weigh all of the evidence, including claimant's testimony, the experts relied upon by employer, the testimony of the project's safety manager and the Andersen project foreman, the inherent risks posed by ladders, and the fact that claimant had performed his job on the ladder successfully for some period of time before his fall.  In performing this function, the Commission found that claimant's fall was caused by the inherent dangers posed by working on ladders, concluding that employer "did not prove by a preponderance of the direct and circumstantial evidence that intoxication or violation of the employer's safety rule caused the claimant's fall and injuries on May 21, 2015."  Because there

---

[7] Code § 65.2-306(A)(1) provides that "[n]o compensation shall be awarded to the employee . . . for an injury . . . caused by . . . [t]he employee's willful misconduct . . . ."  Although employer references claimant's activities as representing "willful misconduct," employer does not cite to Code § 65.2-306(A)(1) in the opening brief.  Regardless of whether claimant's conduct is framed as a violation of Code § 65.2-306(A)(1) or of other subsections of Code § 65.2-306(A), the outcome is the same.

is evidence in the record that would allow a rational factfinder to reach such a conclusion, the Commission's determination is binding on appeal.

Employer argues that credible evidence, *i.e.*, the expert opinions of Drs. Wolfe and Holstege, established that claimant's fall was proximately caused by his intoxication. Employer reasons that Dr. Holstege's unequivocal opinion that claimant's fall from the ladder was caused by his intoxication satisfied the employer's burden of proof, and thus, required the Commission to find that the statutory defenses had been established.

This misunderstands the burden of proof and the requirements faced by a party bearing that burden.

> "The phrase 'burden of proof' refers to two related but distinct concepts: (1) The 'burden of production,' which is the obligation to come forward with evidence to make a *prima facie* case . . ., and (2) the 'burden of persuasion,' *which is the obligation to introduce evidence that actually persuades the fact finder to the requisite degree of belief that a particular proposition of fact is true*."

SunTrust Bank v. PS Bus. Parks, L.P., ___ Va. ___, ___, 791 S.E.2d 571, 575 (2016) (quoting Charles E. Friend & Kent Sinclair, The Law of Evidence in Virginia § 5-1[a], at 298 (7th ed. 2012) (emphasis added)).

There is no question that employer's evidence satisfied the burden of production. The expert evidence was more than sufficient to allow the Commission to conclude that claimant's fall was caused by his intoxication. In fact, at oral argument, claimant conceded that if accepted and believed by the Commission, employer's evidence would support a conclusion that his fall was caused by his intoxication.

However, recognizing that the evidence was sufficient to *allow* the Commission to reach such a conclusion is not the same thing as concluding that the evidence *required* the Commission to reach that conclusion. Expert opinions are not, by themselves, binding on the Commission; rather, like other evidence, they are entitled to the weight the Commission chooses to give them

after due consideration. Great N. Nekoosa Corp. v. Wood, 37 Va. App. 54, 63, 553 S.E.2d 555, 559 (2001) (citing Georgia-Pacific Corp. v. Dancy, 24 Va. App. 430, 439, 482 S.E.2d 867, 871 (1997)). The Commission's opinion makes clear that it remained unconvinced that claimant's intoxication, as opposed to the inherent risks posed by ladders in the workplace, proximately caused the fall. That employer can point to evidence in the record that supports the conclusion it wished the Commission had drawn does not change the calculus. Dollar Gen. Store v. Cridlin, 22 Va. App. 171, 177, 468 S.E.2d 152, 155 (1996) ("The fact that contrary evidence may appear in the record 'is of no consequence if there is credible evidence to support the [C]ommission's finding.'" (quoting Wagner Enters., Inc. v. Brooks, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991))). Simply put, it was employer's burden to convince the Commission that the claimant's fall from the ladder was proximately caused by his intoxication, and employer failed to do so.

## II. Commission's References to the Code of Federal Regulations and Educational Information Maintained by a University

In its final assignment of error, employer argues that the Commission "impermissibly relied upon statistics and information not entered into evidence at hearing and not reasonably inferred from the evidence submitted into the record in reaching its decisions on causation." Specifically, employer argues it was error for the Commission to cite in its opinion OSHA[8] regulations regarding the safety of ladders and educational materials from Clemson University regarding the range of BAC's that generally is considered lethal.[9] We disagree.

---

[8] OSHA is the Occupational Safety and Health Administration of the federal government. On brief, employer misidentifies the agency as "Federal Occupational and Health Safety Administration."

[9] On brief, employer does not challenge the Commission's citation to information produced by the Centers for Disease Control and Prevention, National Institute for Occupational Safety and Health. Because employer does not challenge this citation by the Commission, it has effectively conceded that the Commission's citation to this material was proper.

It is not unusual for courts (or the Commission) to reference non-evidentiary materials to assist in explaining a decision.  See, e.g., Samartino v. Fairfax County Fire & Rescue, 64 Va. App. 499, 511, 769 S.E.2d 692, 698 (2015) (citing to Webster's Third International Dictionary); Women's Healthcare Assocs. v. Mucci, 64 Va. App. 420, 436, 768 S.E.2d 720, 728 (2015) (citing to Taber's Cyclopedic Medical Dictionary).  This especially is true in the Commission where technical rules or practice and procedure are relaxed.  See Rules of the Workers' Compensation Commission, Rule 2.2 ("Except for rules which the Commission promulgates, it is not bound by statutory or common law rules of pleading or evidence *nor by technical rules of practice*." (emphasis added)).  On multiple occasions, the Supreme Court has rejected similar challenges to the Commission's consultation of and citation to materials that were not entered into evidence, recognizing that the

> Commission is not governed in its decisions by common law rules of evidence, and we have held that hearsay statements are properly admissible in evidence before it.  The Commission has the discretion to give probative weight to hearsay statements in arriving at its finding of facts.  It is the sole tribunal provided to ascertain the facts in cases of this character, and it is not for us to determine the weight of the evidence. . . .  Under the broad provisions of the Workmen's Compensation Act, it is authorized to consult medical treatises.

Williams v. Fuqua, 199 Va. 709, 714, 101 S.E.2d 562, 566 (1958) (citations omitted); see also Liberty Mut. Ins. Co. v. Money, 174 Va. 50, 57, 4 S.E.2d 739, 742 (1939) (approving Commission's reliance on a treatise not admitted into evidence).

Furthermore, we note that the Commission's citation to OSHA regulations is, in effect, nothing more than a citation to and a recognition of federal law.  The cited regulations are part of the Code of Federal Regulations and thus were required by law to be published in both the Federal Register and the Code of Federal Regulations.  See Federal Register Act, 44 U.S.C. § 1501 et seq.  The Commission's citation to regulations published by the federal

government simply was not error. Cf. Code § 8.01-388 (providing that courts "shall take judicial notice of the contents of all official publications . . . of the United States, of other countries, and of the political subdivisions and agencies of each published within those jurisdictions pursuant to the laws thereof").

Even if it had been error to cite to federal regulations, such error is harmless beyond any doubt. Code § 8.01-678; K & G Abatement Co. v. Keil, 38 Va. App. 744, 754-55, 568 S.E.2d 416, 421 (2002) (applying harmless error review to a decision of the Commission). The regulations were cited for the unremarkable proposition that ladders are inherently dangerous and that workers fall off ladders in the workplace. The Commission could, and did, cite other sources for the same point. Specifically, the Commission cited both our decision in Beland and information produced by the Centers for Disease Control and Prevention, National Institute for Occupational Safety and Health, neither of which employer challenges on appeal. Because the OSHA regulations, at most, merely reinforced information that already was before the Commission, we can say with complete confidence that the Commission would have reached the same conclusion even if it had not cited to the regulations.

Similarly, even if we assume that the citation to educational information regarding the BAC levels where death normally occurs is sufficiently different from the citations that the Supreme Court approved in Williams and Money as to constitute error, any such error was harmless. Information about BACs generally and what was claimant's BAC was material to establishing that, at the time of the accident: (1) claimant was intoxicated and (2) his level of intoxication at the time of the accident was sufficient to trigger the presumption found in Code § 65.-306(B) that claimant's intoxication "was . . . due to the consumption of alcohol . . . ."[10]

_____

[10] Again, there is no statutory presumption that any particular level of intoxication proves that an accident or injury was caused by a claimant's intoxication.

- 17 -

Applying that information, the Commission *agreed* with employer, finding that claimant was intoxicated at the time of the accident and that the presumption of Code § 65.2-306(B) applied. The Commission even adopted the BAC level proposed by employer's expert, Dr. Wolfe. In short, nothing about the educational information cited by the Commission caused it to disagree with any of employer's evidence about BAC levels.

Rather, having accepted all of employer's evidence regarding claimant's intoxication at the time of the accident, the Commission concluded that employer failed in another respect: proving that intoxication was a proximate cause of the fall. Whether or not death occurs at a BAC of 0.40 to 0.50 or some different level sheds no light on the causation question here. Accordingly, the Commission's citation to an educational website on lethal BAC levels is, at most, harmless error.

CONCLUSION

For the reasons stated, the judgment of the Commission is affirmed.

<u>Affirmed.</u>